IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | In Chapter 13 Proceedings: |
| | ) | |
| RISE K. HESTER, | ) | No. 11-10429 |
| | ) | JUDGE LUNDIN |
| And | ) | |
| | ) | |
| H. MICKEY HAMILTON and | ) | No. 12-04600 |
| MELISSA WILLIS HAMILTON | ) | JUDGE LUNDIN |
| | ) | |
| Debtors. | ) | |

**AMICUS BRIEF OF THE
MIDDLE TENNESSEE ASSOCIATION OF
CONSUMER BANKRUPTCY ATTORNEYS (MACBA)
ON TRUSTEE'S APPLICATION FOR INSTRUCTIONS**

Middle Tennessee Association of Consumer
Bankruptcy Attorneys (MACBA)
Mary Beth Ausbrooks, President
1222 16th Avenue South, Suite 12
Nashville, Tennessee 37212
(615) 242-3996

1

## Introduction

Comes now, the Middle Tennessee Association of Consumer Bankruptcy Attorneys (MACBA) (hereinafter referred to as the "Amicus") and files an *Amicus* Brief as allowed by the Court by Order dated February 14, 2003. (Doc. 63). The issue addressed in this Brief is the manner in which the Chapter 13 Trustee should distribute funds held, but not yet distributed, at the time a Chapter 13 case is dismissed following plan confirmation. The Amicus urge the Court to follow the guidance of 11 U.S.C. Section 1326(a)(2) and hold that, "unless the Court, for cause, orders otherwise", the Trustee shall return any pre-dismissal funds held by him or her at the time of the dismissal of the Chapter 13 Plan to the Debtor after deducting any unpaid claim allowed under Section 503(b).

The payment of Section 503(b) expenses, especially attorney's fees, as a priority, upon the dismissal of a Chapter 13 case will ensure that Chapter 13 bankruptcy relief is available to all persons regardless of economic circumstances. In this regard, most, if not all, members of the Amicus organization undertake the representation of debtor-clients in the Bankruptcy Court with no requirement of a retainer or up-front payment for a Chapter 13 case. In fact, the overwhelming number of debtor-clients represented by Amicus attorneys are incapable of paying for legal representations in advance, usually for the same reasons they are filing for bankruptcy relief. This compensation arrangement for legal representation allows consumer debtors an opportunity to reorganize under the protection of the Bankruptcy Code regardless of their financial circumstances or their immediate access to funds for an up-front payment for legal services. Access to Chapter 13 relief is,

2

and should remain, available to all honest debtors based upon their ability to dedicate a portion of their future earnings over a period of three (3) to five (5) years as the Code dictates, not based on their current, pre-petition ability to retain counsel.

The decision made in this case may adversely affect the ability of Amicus attorneys to continue offering their services to prospective Chapter 13 debtors without an initial retainer. This will artificially limit access to Chapter 13 relief for debtors based upon their financial means. In order to foster the policies and purposes of the Bankruptcy Code to provide a fresh start for all honest debtors seeking bankruptcy relief, the Court is urged to establish a procedure whereby, upon dismissal of a Chapter 13 Plan, the Trustee routinely pays all claims allowed under Section 503(b) and distributes the balance to the Debtor, "unless the Court, for cause, otherwise directs" based upon the unique equities of the case.

## Memorandum of Law

The Trustee has presented two opposing views in regard to the distribution of funds held by the Trustee at the time the Chapter 13 case is dismissed. One view holds that the funds must be distributed to the Debtor. In re Nash, 765 F.2d 1410 (9th Cir. 1985). The opposing view states that the funds must be distributed according to the confirmed Plan. In re Parrish, 275 B.R. 424 (Bankr. D.D.C. 2002). The Amicus respectfully suggests, although both cases present substantial support for their respective positions, neither identify the precise means, and legal authority, by which a bankruptcy court can achieve a fair result under the myriad of circumstances that debtors, creditors, and the court faces when a Chapter 13 Plan is dismissed.

In Nash, the Ninth Circuit held that the Trustee was required to return the funds to the Debtor that he held at the time that the Debtor's Chapter 13 Plan was dismissed. In so doing, the Court rejected the arguments of the Trustee and the creditor that the Debtors were bound by the terms of the confirmed Plan. The court reasoned that because "(t)he dismissal (of the Plan) effectively vacated the first confirmed plan", the Plan was no longer in force. In re Nash, 765 F.2d 1410, 1413 (9th Cir. 1985).

> (The funds paid) received by the Trustee before dismissal was the property of the estate because it was received after commencement of the case but before dismissal. 11 U.S.C. § 1306(a)(2). ... (O)wnership over all of the property of the estate, including the $907.14 (that had not been distributed at the time of dismissal), vested in the (Debtors) once the plan was confirmed. 11 U.S.C. § 1327(b). (citation omitted).
>
> The (Debtors) ownership of the $907.14 is further supported by the fact that a Chapter 13 dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). The legislative history of § 349(b) states that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." (citation omitted). We have previously stated that § 349 "obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy." (citation omitted).

In re Nash, 765 F.2d 1410, 1414 (9th Cir. 1985)

In contrast, the Parrish court held that Sections 1326(a)(2) and 349(b)(3) must be read in *pari materia*. In this context, Section 1326(a)(2) "revests the Debtor with the funds (remaining in the Trustee's hands at the time of dismissal) subject to" whatever payments are due under the dismissed Plan. In re Parrish, 275 B.R. 424, 426 (Bankr. D.D.C. 2002). The Court found "nothing in § 349(b) (that) expressly treats § 1326(a)(2)

4

Case 3:12-bk-04600  Doc 66  Filed 03/08/13  Entered 03/08/13 11:37:38  Desc Main
Document      Page 4 of 11

as a dead letter upon dismissal of a case." Id.   According to the Parrish court:

> Section 1326(a)(2) makes no exception with respect to funds held by a trustee at the moment of dismissal: by its terms, those funds must be disbursed in accordance with the terms of the confirmed plan. In respect to such funds, no provision of the Bankruptcy Code overrides § 1326(a)(2) based on dismissal of the case. The Bankruptcy Code provision that addresses the effect of dismissals is 11 U.S.C. § 349. ... (T)he court concludes that § 349(b) ought not be construed as terminating, at the moment of dismissal, the command of § 1326(a)(2) that the trustee distribute funds held under the confirmed plan in accordance with the plan.

Id. at 427.

Because § 349(b)(2) expressly enumerates the specific orders which are vacated by dismissal, and such list does not contain the order that confirms the Chapter 13 Plan, the Parrish court concluded that "Congress did not intend § 349(b) to vacate an order confirming a chapter 13 plan such as to render § 1326(a)(2) no longer controlling with respect to the disposition of funds held by the trustee under a confirmed plan at the moment of dismissal."  Id. at 427.  "It is doubtful that Congress intended § 349(b)(3) to override § 1326(a)(2) such that the debtor will recover plan payments scot free of any filing fee obligation, leaving the court to chase the debtor for payment of the filing fee."  Id.  See also, In re Tran, 209 B.R. 330, 334 (B.A.P. 9th Cir. 2004).

The Amicus suggest a third option whereby the Bankruptcy Court is not saddled with an arbitrary rule for the distribution of pre-dismissal Chapter 13 funds held by the trustee.  This option, and the rationale underlying it, will safeguard the debtors' rights to Chapter 13 relief irrespective of financial means, encourage Chapter 13 debtors to continue making Plan payments even if the Plan is in danger of being dismissed, and allow the Court

5

to fashion a distribution of remaining plan proceeds as the equities of the case may dictate.

Neither <u>Nash</u> nor <u>Parrish</u> acknowledge the power and authority of the Bankruptcy court to fashion an equitable distribution of funds remaining in the Trustee's possession at the time that a Chapter 13 Plan is dismissed. The <u>Nash</u> and <u>Parrish</u> courts fail to recognize, as stated in <u>In re Witte</u>, 279 B.R. 585 (Bankr.E.D.Cal.2002), that § 349(b) gives "the court discretion to determine how property of the estate should be distributed upon dismissal." In relevant part, § 349(b) provides:

> <u>Unless the court, for cause, orders otherwise</u>, a dismissal of a case other than under section 742 of this title—...
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

(emphasis supplied).

Although "U.S.C. § 349(b)(3) " provides a default mechanism for returning property of the estate to the debtor upon dismissal, the court retains the power to "for cause, order otherwise." <u>In re Darden</u>, 474 B.R. 1, 8 (Bankr. D. Mass. 2012)(holding that a debtor does not have the absolute right to withhold Plan funds from distribution to a creditor upon dismissal of the Chapter 13 case). The <u>Darden</u> court recognized that "(t)he Bankruptcy Code does not define "cause," leaving it to the bankruptcy courts to fashion equitable dispositions different from those that, unless the court "orders otherwise," would be dictated by § 349(b)." <u>In re Darden</u>, 474 B.R. at 12.

The legislative history of § 349(b) confirms that the Bankruptcy court retains the power and authority to craft an equitable distribution upon dismissal of a Chapter 13 case.

6

The legislative history accompanying § 349(b) provides:

> Subsection (b) specifies that the dismissal reinstates proceedings or custodianships that were superseded by the bankruptcy case, reinstates avoided transfers, reinstates voided liens, vacates any order, judgment, or transfer ordered as a result of the avoidance of a transfer, and revests the property of the estate in the entity in which the property was vested at the commencement of the case. <u>The court is permitted to order a different result for cause</u>. The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case. This does not necessarily encompass undoing sales of property from the estate to a good faith purchaser. Where there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case.
> H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 338 (1977); S.Rep. No. 95–989, 95th Cong. 2d Sess. 48–49 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787 (emphasis added).

<u>In re Genovese</u>, 91 B.R. 831, 833-34 (Bankr. E.D. Tenn. 1988).

There is no conflict between this interpretation of § 349(b) and §1326(a)(2) because the latter section, by its express terms, does not pertain to funds received <u>after</u> confirmation of a Chapter 13 Plan. In this regard, Section 1326(a)(1) requires that a debtor "commence making payment not later than 30 days <u>after the date of the **filing** of the plan</u>... in the amount - (A) <u>proposed</u> by the plan to the trustee". (emphasis supplied). The "proposed payment(s)" required under § 1326(a) are often made for a significant amount of time before the proposed Plan is ultimately confirmed or dismissed. Section 1326(a)(2) expressly references "payment(s) made under paragraph (1)(A)" and only directs the distribution of "such payments". It does <u>not</u> reference payments made <u>after</u> a Plan is confirmed. As stated in <u>In re Tran</u>, <u>supra</u>:

7

Case 3:12-bk-04600 Doc 66 Filed 03/08/13 Entered 03/08/13 11:37:38 Desc Main
Document Page 7 of 11

A payment made under this (§ 1326(a)(2)) shall be retained by the trustee until confirmation or denial of confirmation of a plan. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as practicable. If a plan is not confirmed, the trustee shall return any such payment to the debtor, after deducting any unpaid claim allowed under section 503(b) of this title. § 1326(a)(2) (emphasis added). The preceding paragraph of subsection (a) requires the debtor to begin making plan payments within 30 days of filing a plan—that is, pre-confirmation.

"By its terms, § 1326(a)(2) does not pertain to funds received by a trustee after confirmation of a Chapter 13 plan." (citations omitted). The section does not purport to address distribution of funds received post-confirmation or the impact of dismissal on the trustee's duty to distribute funds.

309 B.R. at 335-36. See also, In re Michael, 699 F.3d 305, 311 (3rd Cir. 2012)(if Congress had intended to direct the distribution of funds received post-confirmation, it could have included language to cover such post-confirmation payments in § 1326(a)(2)).

Based upon the foregoing, this Court is urged to adopt the position that § 349(a) allows the Court to allocate the distribution of funds remaining in the Trustee's hands after the dismissal of the Chapter 13 case; first, for payment of any allowed claims under Section 503(b) and, second, to the Debtor. Any party can seek a different distribution "for cause". See, In re Hufford, 460 B.R. 172, 178 (Bankr. N.D. Ohio 2011)("for cause" standard gives bankruptcy court flexibility to react to equitable considerations ). As stated in Hufford:

(E)ven if this Court were inclined to follow the court's decision in In re Nash, the particular circumstances of this case compel a different result. Section 349(b), upon which the court in In re Nash relied, begins by providing that "[u]nless the court, for cause, orders otherwise, ..." In this matter, the Court's order, dismissing the Debtors' bankruptcy case, made such a finding, providing "that John P. Gustafson, the Standing Chapter 13 Trustee, disburse any funds on hand to the Creditors[.]" This order was not appealed, making its holding res judicata. (citation omitted).

8

In re Hufford, 460 B.R. 172, 176-78 (Bankr. N.D. Ohio 2011)(emphasis supplied).

Even after a voluntary dismissal by a Chapter 13 Debtor, the Court is authorized to consider and rule upon claims of creditors who seek distribution of funds held by the Trustee. See, In re Wcislak, 446 B.R. 827, 830 (Bankr. N.D. Ohio 2011)("even upon dismissal, the Court still retains jurisdiction to hear matters related to a dismissed case."). The "for cause" standard gives bankruptcy court flexibility to react to equitable considerations.

The Court's attention is directed to In re Cox, 381 B.R. 525, 528 (Bankr. E.D. Tenn. 2008) where the court acknowledged the discretion afforded by Section 1326(a) to fashion a post-dismissal distribution of Chapter 13 funds in accordance with the equities of the case. The Cox court stated:

> "[T]he September 12, 2007 Dismissal Order expressly directs that "[t]he trustee shall disburse the balance of funds on hand in accordance with the Debtors' confirmed plan. (11 U.S.C. § 1326(c))." This directive unambiguously satisfies the "[u]nless the court, for cause, orders otherwise" proviso of § 349(b) and thus overrides the provision of § 349(b)(3) re-vesting "property of the estate" in the Debtors upon dismissal of their Chapter 13 case." Id. at 528.

The Amicus suggest that the Court follow the model reflected in In re Parker, 400 B.R. 55 (Bankr. E.D. Pa 2009), where, upon dismissal, the trustee paid the Section 503(b) claims from the funds remaining in the Plan and with the balance be distributed to the debtor if those funds were paid post-confirmation and to the creditors if paid prior to court-approval of the Plan. Of course, this distribution scheme could be modified if a party files a motion to modify it "for cause".

9

## CONCLUSION

For the foregoing, reasons, the Amicus respectfully requests that the Court hold that "unless the Court, for cause, orders otherwise", the Trustee shall return any pre-dismissal funds held by him or her at the time of the dismissal of the Chapter 13 Plan to the Debtor after deducting any unpaid claim allowed under Section 503(b).

Respectfully submitted,

*/s/ Mary Beth Ausbrooks*
Middle Tennessee Association of Consumer
Bankruptcy Attorneys (MACBA)
By: Mary Beth Ausbrooks, President
1222 16th Avenue South, Suite 12
Nashville, Tennessee 37212
(615) 242-3996

10

# CERTIFICATE OF SERVICE

I certify that on this 8th day of March, 2013, I served a copy of the foregoing in the following manner:

***Email by Electronic Case Noticing to:***

Beth R. Derrick, Asst. U.S. Trustee
Henry E. Hildebrand, III, Chapter 13 Trustee
Rabin P. Nimmo, Counsel for Rise K. Hester
Gregory R. Atwood, Counsel for H. Mickey and Melissa W. Hamilton


***By U.S. Postal Service, postage prepaid to:***

Rise K. Hester, 378 Wimpole Drive, Nashville, TN 37211
Barbara A. Rose, Baker Donelson, et al., 211 Commerce Street, Suite 800, Nashville, TN 37201
H. Mickey and Melissa W. Hamilton, 2615 Myers Park Terrace, Brentwood, TN 37027
Paul J. Spina, III, Spina & LaVelle, 1500 Urban Center Drive, Suite 450, Birmingham, AL 35252
Max Loosen, 102 Woodmont Blvd., Woodmont Centre Suite 520, Nashville, TN 37205
Kelsey Grodzicki, Rubin Lublin LLC, 3740 DaVinci Court, Suite 150, Peachtree Corners, GA 30092
Kelsey Grodzicki, 3200 West End Avenue, Suite 500, Nashville, TN 37203

*/s/ Mary Beth Ausbrooks*
MARY BETH AUSBROOKS

11

Case 3:12-bk-04600   Doc 66   Filed 03/08/13   Entered 03/08/13 11:37:38   Desc Main
Document   Page 11 of 11